# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

*In re*                               :       Chapter 11 ~~Case No.~~

                                   :

**ARMSTRONG WORLD INDUSTRIES,**   :      <u>Case No.</u> 00-4471 (JKF)

**INC.,** *et al.,*                        :

                                   :

                 **Debtors.**     :      **(Jointly Administered)**

------------------------------------------------------- x

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
## NITRAM LIQUIDATORS, INC.
### AND
## DESSEAUX CORPORATION OF NORTH AMERICA

<u>Mark D. Collins (No. 2981)</u>
<u>Jason M. Madron (No. 4431)</u>
<u>RICHARDS, LAYTON & FINGER, P.A.</u>
<u>One Rodney Square</u>
<u>P.O. Box 551</u>
<u>Wilmington, Delaware 19899</u>
<u>(302) 651-7700</u>

-and-

<u>Stephen Karotkin</u>
<u>Debra A. Dandeneau</u>
<u>WEIL, GOTSHAL & MANGES LLP</u>
<u>767 Fifth Avenue</u>
<u>New York, New York 10153</u>
<u>(212) 310-8000</u>

<u>ATTORNEYS FOR DEBTORS AND</u>
<u>DEBTORS IN POSSESSION</u>

Dated: October                     26,                        2007
      Wilmington, Delaware

# TABLE OF CONTENTS

Page

ARTICLE I     DEFINITIONS...................................................................................1

    A.     Defined Terms ..........................................................................................1

        1.1     Administrative Bar Date ..................................................................1

        1.2     Administrative Expense .................................................................1

        1.3     Administrative Expense Objection Deadline ...........................................2

        1.4     Affiliate..........................................................................................2

        1.5     Affiliate Claims..............................................................................2

        1.6     Allowed..........................................................................................2

        1.7     Allowed Amount.............................................................................2

        1.8     Available Cash................................................................................3

        1.9     AWI ...............................................................................................3

        1.10     AWI Plan .......................................................................................3

        1.11     Ballot.............................................................................................3

        1.12     Bankruptcy Code ...........................................................................3

        1.13     Bankruptcy Court...........................................................................3

        1.14     Bankruptcy Rules...........................................................................3

        1.15     Board of Directors .........................................................................3

        1.16     Business Day ..................................................................................3

        1.17     Cash ...............................................................................................3

        1.18     Chapter 11 Cases ...........................................................................3

        1.19     Claim..............................................................................................3

        1.20     Claims Settlement Guidelines.........................................................4

        1.21     Class...............................................................................................4

        1.22     Commencement Date.......................................................................4

        1.23     Confirmation Date ..........................................................................4

        1.24     Confirmation Order.........................................................................4

        1.25     Contingent Claim............................................................................4

        1.26     Creditor..........................................................................................4

        1.27     Debtors...........................................................................................4

        1.28     Debtors' Common Stock .................................................................4

        1.29     Debtors in Possession ....................................................................4

        1.30     Desseaux ........................................................................................4

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 1.31 | Desseaux Common Stock | 4 |
| 1.32 | Disallowed Claim | 4 |
| 1.33 | Disbursing Agent | 4 |
| 1.34 | Disclosure Order | 4 |
| 1.35 | Disclosure Statement | 5 |
| 1.36 | Disputed Claim | 5 |
| 1.37 | Disputed Claim Amount | 5 |
| 1.38 | Disputed Unsecured Claims Reserve | 5 |
| 1.39 | Distribution | 5 |
| 1.40 | Distribution Date | 5 |
| 1.41 | District Court | 5 |
| 1.42 | Effective Date | 5 |
| 1.43 | Entity | 5 |
| 1.44 | Equity Interest | 5 |
| 1.45 | Estimated Amount | 5 |
| 1.46 | Final Distribution Date | 5 |
| 1.47 | Final Order | 6 |
| 1.48 | Initial Distribution Date | 6 |
| 1.49 | Insurance Proceeds | 6 |
| 1.50 | Intercompany Claim | 6 |
| 1.51 | Internal Revenue Code | 6 |
| 1.52 | IRS | 6 |
| 1.53 | Nitram | 6 |
| 1.54 | Nitram Common Stock | 6 |
| 1.55 | Nitram PI Claims | 6 |
| 1.56 | Nitram PI Insurance Policies | 7 |
| 1.57 | Plan | 7 |
| 1.58 | Priority Non-Tax Claim | 7 |
| 1.59 | Priority Tax Claim | 7 |
| 1.60 | Pro Rata Share | 7 |
| 1.61 | Retention Period | 7 |
| 1.62 | Schedules | 7 |

1.63  Secured Claim ............................................................................7

1.64  Unliquidated Claim .....................................................................7

1.65  Unsecured Claim .........................................................................7

1.66  Voting Deadline ..........................................................................7

1.67  Voting Procedures .......................................................................7

B.  Other Terms .......................................................................................7

C.  Exhibits .............................................................................................8

ARTICLE II  PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ...........................................................8

2.1  Payment of Allowed Administrative Expenses ..........................8

2.2  Compensation and Reimbursement Claims ...............................8

2.3  Priority Tax Claims .....................................................................8

ARTICLE III  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ..........................................................................8

3.1  Summary .....................................................................................8

3.2  Classification and Treatment ....................................................10

ARTICLE IV  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .................................................................................................13

4.1  Modification of the Plan ...........................................................13

4.2  Revocation or Withdrawal ........................................................13

ARTICLE V  PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS ...........13

5.1  Objections to Claims; Prosecution of Disputed Claims ...........13

5.2  Distributions on Account of Disputed Claims ..........................13

5.3  Nitram PI Claims .......................................................................14

5.4  Estimation of Claims .................................................................14

5.5  Disputed Claims Reserves .........................................................15

ARTICLE VI  ACCEPTANCE OR REJECTION OF THE PLAN .............................16

6.1  Impaired Classes to Vote ..........................................................16

6.2  Acceptance by Class of Claims .................................................16

6.3  Nonconsensual Confirmation ....................................................16

ARTICLE VII  DISTRIBUTIONS UNDER THE PLAN .........................................16

7.1  Disbursing Agent .......................................................................16

7.3  Distributions to Holders of Allowed Claims ............................17

| | | | |
|---|---|---|---|
| 7.4 | Distributions under the Plan | 17 |
| 7.5 | Timing of Distributions under the Plan | 17 |
| 7.6 | Manner of Payment under the Plan | 17 |
| 7.7 | Fractional Distributions | 17 |
| 7.8 | Delivery of Distributions | 17 |
| 7.9 | Distribution of Undeliverable or Unclaimed Property | 17 |
| 7.10 | Allocation of Plan Distributions Between Principal and Interest | 18 |
| 7.11 | Distributions to Holders as of the Confirmation Date | 18 |
| 7.12 | Minimum Distributions | 18 |
| 7.13 | Withholding and Reporting Requirements | 18 |
| 7.14 | Setoffs | 18 |
| ARTICLE VIII | IMPLEMENTATION OF THE PLAN | 19 |
| 8.1 | Substantive Consolidation | 19 |
| 8.2 | Continuing Existence | 19 |
| 8.3 | Establishment of the Administrative Bar Date | 20 |
| 8.4 | Term of Injunctions or Stays | 20 |
| 8.5 | Occurrence of the Confirmation Date | 21 |
| 8.6 | Occurrence of the Effective Date | 21 |
| 8.7 | Accounts | 21 |
| 8.8 | Cancellation of Securities | 21 |
| 8.9 | Authority of the Debtors to Effectuate Documents and Further Transactions | 21 |
| ARTICLE IX | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 22 |
| 9.1 | Rejection of Executory Contracts and Unexpired Leases | 22 |
| 9.2 | Claims Arising from Rejection, Termination or Expiration | 22 |
| 9.3 | Insurance Policies and Agreements | 22 |
| 9.4 | Indemnification and Reimbursement Obligations | 23 |
| 9.5 | Compensation and Benefit Programs | 23 |
| ARTICLE X | RETENTION OF JURISDICTION | 23 |
| ARTICLE XI | MISCELLANEOUS PROVISIONS | 24 |
| 11.1 | Payment of Statutory Fees | 24 |
| 11.2 | Rights of Action | 24 |
| 11.3 | Third Party Agreements | 24 |

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 11.4 | Exculpation | 25 |
| 11.5 | Notices | 25 |
| 11.6 | Headings | 25 |
| 11.7 | Severability | 25 |
| 11.8 | Governing Law | 25 |
| 11.9 | Plan Controls | 26 |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
In re                                  :    Chapter 11 Case No.
                                       :
ARMSTRONG WORLD INDUSTRIES,            :    00-4471 (JKF)
INC., et al.,                          :
                                       :
                   Debtors.            :    (Jointly Administered)
------------------------------------------------------------- x
```

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
## NITRAM LIQUIDATORS, INC.
### AND
## DESSEAUX CORPORATION OF NORTH AMERICA

    Nitram Liquidators, Inc. and Desseaux Corporation of North America, as debtors and debtors in possession, hereby propose the following joint chapter 11 plan of liquidation.

    The Plan provides for the liquidation and conversion of all of the Debtors' respective assets, other than the Nitram PI Insurance Policies, to Cash and the distribution of the net proceeds therefrom to their creditors, in accordance with their relative priority. The Plan is a joint plan of liquidation and provides that the Debtors' chapter 11 cases will be substantively consolidated. Accordingly, and except as expressly provided for herein, all provisions of the Plan, including without limitation, the definitions and distributions to creditors, shall apply to the assets and claims of the consolidated bankruptcy estates of the Debtors.

## ARTICLE I

## DEFINITIONS

    **A. Defined Terms.** As used herein, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

    1.1 *Administrative Bar Date*: The date**first Business Day** that is thirty (30) ~~Business Days~~**days** after the Effective Date and is the deadline for a holder of an Administrative Expense to file a request with the Bankruptcy Court for payment of such Administrative Expense in the manner indicated in section 8.3 of the Plan.

    1.2 *Administrative Expense*: Any Claim constituting a cost or expense of administration in the Chapter 11 Cases under section 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any expenses of professionals under sections 330 and 331 of the Bankruptcy Code, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, in connection with the conduct of their businesses or the rendition of services, any allowed compensation or reimbursement of expenses under section 503(b)(2)-(5) of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123, title 28, United States Code.

1.3    *Administrative Expense Objection Deadline*: The first Business Day that is thirty (30) days after the Administrative Bar Date, as such date may be extended from time to time by order of the Bankruptcy Court.

1.4    *Affiliate*: Any Entity that is or was an "affiliate" of either of the Debtors, as of any time from the Commencement Date through and including date immediately preceding the Effective Date, within the meaning of section 101(2) of the Bankruptcy Code.

1.5    *Affiliate Claims*: All Claims against the Debtors held by an Affiliate, excluding Intercompany Claims.

1.6    *Allowed*:

(a)    With respect to any Claim (other than an Administrative Expense), proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent asserted in the proof of such Claim, or (ii) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order of the Bankruptcy Court or by an agreement with either of the Debtors, as the case may be, in accordance with the Claims Settlement Guidelines as in effect at the time of such agreement.

(b)    With respect to any Claim (other than an Administrative Expense), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent that it has been listed by either of the Debtors in their Schedules as liquidated in amount and not disputed or contingent.

(c)    With respect to any Claim that is asserted to constitute an Administrative Expense

(i)    filed by the Administrative Bar Date, any such Claim to the extent (i) no objection is interposed by the Administrative Expense Objection Deadline or (ii) if an objection is interposed by the Administrative Expense Objection Deadline, such Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or

(ii)    that represents a Claim of a professional person employed under section 327 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code or an Administrative Expense arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code, such Claim to the extent it is allowed by a Final Order of the Bankruptcy Court.

1.7    *Allowed Amount*: The lesser of (a) the dollar amount of an Allowed Claim or (b) the Estimated Amount of such Claim. Unless otherwise specified herein or by Final

Order of the Bankruptcy Court, the Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed Claim from and after the Commencement Date.

1.8 *Available Cash*: all Cash on hand of the Debtors as of the last day of the month immediately preceding a Distribution Date *less* the amount of Cash required to be retained by the Debtors for Disputed Claims pursuant to section 5.4 of the Plan.

1.9 *AWI*: Armstrong World Industries, Inc., the sole parent company of Desseaux and an Affiliate of Nitram, which commenced a case under chapter 11 of the Bankruptcy Code that was being jointly administered with the Debtors' Chapter 11 Cases by order of the Bankruptcy Court pursuant to Bankruptcy Rule 1015, and which emerged, pursuant to the AWI Plan, from chapter 11 on October 2, 2006.

1.10 *AWI Plan*: The Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., as Modified, which was confirmed by the United States District Court for the District of Delaware by order dated August 18, 2006.

1.11 *Ballot*: The form or forms distributed to holders of impaired Claims and Equity Interests on which is to be indicated the acceptance or rejection of the Plan.

1.12 *Bankruptcy Code*: The Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Chapter 11 Cases.

1.13 *Bankruptcy Court*: The United States District Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court constituted pursuant to section 151 of title 28 of the United States Code.

1.14 *Bankruptcy Rules*: The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

1.15 *Board of Directors*: The Board of Directors of each of Nitram and Desseaux, as the case may be, as they may exist from time to time.

1.16 *Business Day*: Any day on which commercial banks are required to be open for business in New York, New York.

1.17 *Cash*: means legal tender of the United States of America.

1.18 *Chapter 11 Cases*: Collectively, the chapter 11 cases of Nitram and Desseaux pending in the Bankruptcy Court as *In re Armstrong World Industries, Inc., et al.*, Case No. 00-4471 (JKF) (Jointly Administered).

1.19 *Claim*: A "claim," as defined in section 101(5) of the Bankruptcy Code, against the consolidated Debtors, as debtors or Debtors in Possession, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under section 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other Contingent Claim.

1.20    *Claims Settlement Guidelines*: The settlement guidelines and authority contained in that certain Order Granting Motion of the Debtors for Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(b) Authorizing the Establishment of Procedures to Settle Certain Prepetition Claims Against the Debtors' Estates dated May 31, 2002, as amended and restated by the amendments set forth in Exhibit 1.20 to the Plan.

1.21    *Class*: Any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.22    *Commencement Date*: December 6, 2000.

1.23    *Confirmation Date*: The date on which the Confirmation Order has been entered by the Clerk of the Bankruptcy Court.

1.24    *Confirmation Order*: The order or orders of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.25    *Contingent Claim*: Any Claim, the liability for which attaches or is dependent upon the occurrence or happening, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and either of the Debtors now or hereafter exists or previously existed.

1.26    *Creditor*: Any Entity that holds a Claim against one or both of Nitram or Desseaux as Debtors or Debtors in Possession.

1.27    *Debtors*: Collectively, Nitram and Desseaux, as such Entities have been substantively consolidated pursuant to the Plan.

1.28    *Debtors' Common Stock*: Collectively, the Desseaux Common Stock and Nitram Common Stock.

1.29    *Debtors in Possession*: The Debtors in their capacity as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.30    *Desseaux*: Desseaux Corporation of North America, a Delaware corporation, a Debtor in the Chapter 11 Cases, and a proponent of the Plan.

1.31    *Desseaux Common Stock*: Common stock of Desseaux, with a per share par value of $0.00, authorized pursuant to the articles of incorporation as in effect immediately prior to the Effective Date.

1.32    *Disallowed Claim*: A Claim that is disallowed in its entirety by a Final Order of the Bankruptcy Court or such other court or arbitral forum of competent jurisdiction.

1.33    *Disbursing Agent*: Any Entity in its capacity as a disbursing agent under section 7.1 hereof.

1.34    *Disclosure Order*: An Order entered by the Bankruptcy Court approving, *inter alia*, the Disclosure Statement and the Voting Procedures.

1.35    *Disclosure Statement*:  The Disclosure Statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.36    *Disputed Claim*:  A Claim that is neither an Allowed Claim nor a Disallowed Claim.

1.37    *Disputed Claim Amount*:  The Estimated Amount of a Disputed Claim or, if no Estimated Amount exists, the amount set forth in the proof of claim relating to such Disputed Claim as the liquidated amount of such Disputed Claim.

1.38    *Disputed Unsecured Claims Reserve*:  The reserve account created pursuant to section 5.5 of the Plan.

1.39    *Distribution*:  The payment or distribution under the Plan of Available Cash to the holders of Allowed Claims.

1.40    *Distribution Date*:  (a) The Initial Distribution Date, (b) the first Business Day after the end of the months of June and December, commencing with the first such date to occur more than sixty (60) days after the Initial Distribution Date and continuing until the second anniversary of the Effective Date, (c) after the second anniversary of the Effective Date, the first Business Day after the end of the month of December, and (d) the Final Distribution Date; *provided*, *however*, that any Unsecured Claim that becomes Allowed less than twenty (20) Business Days prior to a Distribution Date may, at the election of the Disbursing Agent, be treated as a Disputed Claim for the purposes of the Distribution occurring on such Distribution Date and shall not receive a Distribution until the Distribution Date immediately succeeding such Distribution Date.

1.41    *District Court*:  The United States District Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

1.42    *Effective Date*:  A Business Day selected by the Debtors that is within 31 days after the date by which all of the conditions precedent to the effectiveness of the Plan specified in section 8.6 have been satisfied or waived or, if a stay of the Confirmation Order is in effect, a date selected by the Debtors that is within 31 days after the date of the expiration, dissolution, or lifting of such stay.

1.43    *Entity*:  An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other person or entity.

1.44    *Equity Interest*:  Any interest in either of the Debtors represented by, or otherwise related to, Desseaux Common Stock or Nitram Common Stock.

1.45    *Estimated Amount*:  The estimated dollar value of an Unliquidated Claim, Disputed Claim, or Contingent Claim pursuant to section 502(c) of the Bankruptcy Code.

1.46    *Final Distribution Date*:  A date selected by the Debtors in their discretion that is on or after the Initial Distribution Date and that is within forty-five (45) days after the later to occur of the following:  (a) all Disputed Claims have become either Allowed

Claims or Disallowed Claims, and (b) the Retention Period has expired with respect to all Distributions occurring prior to the date in (a) of this sentence.

1.47 *Final Order*: An order as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors, as the case may be, and their counsel or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired.

1.48 *Initial Distribution Date*: A date after the Effective Date that is selected by the Debtors in their discretion but, in any event, is within forty-five (45) days after the latest to occur of the following: (a) the Administrative Bar Date, (b) the date on which a Final Order has been entered with respect to all requests to estimate filed pursuant to section 5.4 of the Plan, and (c) the date on which each Nitram PI Claim the holder of which has elected treatment under Class 3 has become Allowed or Disallowed or has a Disputed Claim Amount established by agreement of the holder of such Claim; *provided, however*, the Initial Distribution Date may be extended to such later date as the Bankruptcy Court may establish upon request by the Debtors, for cause shown.

1.49 *Insurance Proceeds*: Any indemnity proceeds payable under the Nitram PI Insurance Policies with respect to liability for the Nitram PI Claims.

1.50 *Intercompany Claim*: Any Claim of a Debtor against another Debtor, including, but not limited to, those Claims listed in Exhibit 1.50 to the Plan.

1.51 *Internal Revenue Code*: The Internal Revenue Code of 1986, as amended from time to time, and any applicable rulings, Treasury Regulations, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.52 *IRS*: The United States Department of Treasury-Internal Revenue Service.

1.53 *Nitram*: Nitram Liquidators, Inc., f/k/a D.D. Martin Surfacing, Inc., Martin Surfacing, Inc. and D.D. Nitram, Inc., a Delaware corporation, a Debtor in the Chapter 11 Cases, and a proponent of the Plan.

1.54 *Nitram Common Stock*: Common stock of Nitram, with a per share par value of $0.00, authorized pursuant to the articles of incorporation as in effect immediately prior to the Effective Date.

1.55 *Nitram PI Claims*: Any Claims against Nitram alleging damages arising in connection with personal injuries allegedly incurred as a result of Nitram's operations and activities prior to June 22, 1999.

1.56    *Nitram PI Insurance Policies*:  The liability insurance policies covering the period August 1, 1995 through June 22, 1999, that are potentially available to respond to defense costs and indemnity payments incurred in connection with the Nitram PI Claims.

1.57    *Plan*:  This plan of liquidation, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect at the time such reference becomes operative.

1.58    *Priority Non-Tax Claim*:  Any Claim to the extent such claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense, Priority Tax Claim, or statutory fee as set forth in section 11.1 of the Plan.

1.59    *Priority Tax Claim*:  A Claim that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.60    *Pro Rata Share*:  Means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims plus the Disputed Claim Amount of all Disputed Claims in the same Class.

1.61    *Retention Period*:  With respect to each Distribution, six (6) months from and after the Distribution Date, or such shorter period as the Bankruptcy Court may set.

1.62    *Schedules*:  The schedules of assets and liabilities and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been and may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

1.63    *Secured Claim*:  Any Claim to the extent of the value of any interest in property of the estate of the Debtors securing such Claim.

1.64    *Unliquidated Claim*:  Any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.65    *Unsecured Claim*:  Any Claim other than an Administrative Expense, a Priority Tax Claim, a Secured Claim, a Priority Non-Tax Claim, an Intercompany Claim, or an Affiliate Claim.

1.66    *Voting Deadline*:  The date by which all completed ballots must be received, as set forth in the Disclosure Order.

1.67    *Voting Procedures*:  The procedures, set forth in Exhibit 1.67 to the Plan and approved by the Bankruptcy Court pursuant to the Disclosure Order, (a) by which holders of Claims may vote to accept or reject the Plan and (b) governing solicitation and tabulation of such votes.

**B. Other Terms.**  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and

the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

**C. Exhibits.** All Exhibits to the Plan shall be contained in a separate Exhibit Volume, which shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) thirty (30) days prior to the commencement of the hearing on confirmation of the Plan and (ii) fifteen (15) days prior to the deadline for filing objections to confirmation of the Plan. Such Exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims or Equity Interests may also obtain a copy of such Exhibit Volume, once filed, from the Debtors by a written request sent to the following address:

Weil, Gotshal & Manges LLP<br>
Attn: Ms. Lori Seavey<br>
1395 Brickell Avenue, Suite 1200<br>
Miami, Florida 33131

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

2.1 *Payment of Allowed Administrative Expenses.* The Allowed Amount of each Administrative Expense shall be paid in full, in Cash, on the latest of (a) the Effective Date, (b) as soon as practicable after such Administrative Expense is Allowed, and (c) such later date as may be mutually agreed upon between the holder of an Allowed Administrative Expense and the Debtors.

2.2 *Compensation and Reimbursement Claims.* The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowances of compensation or reimbursement of expenses under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code.

2.3 *Priority Tax Claims.* Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim in full, in Cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1 *Summary.* The Plan is premised upon the substantive consolidation of the Debtors. Accordingly, the assets and liabilities of the Debtors are deemed to become the assets and liabilities of a single, consolidated entity, and Intercompany Claims are eliminated. Additionally, upon the substantive consolidation of the Debtors, all Affiliate Claims will be voluntarily subordinated to non-Affiliate Claims. Claims and Equity Interests are classified for

all purposes, including, without express or implied limitation, voting, confirmation, and distribution pursuant to the Plan, as follows:

| CLASS | TREATMENT | STATUS | ENTITLED TO VOTE? |
|-------|-----------|--------|-------------------|
| **Class 1:** Priority Non-Tax Claims | Paid in full, in Cash, on the later of the Effective Date or as soon as practicable after such Priority Non-Tax Claim becomes Allowed. | Unimpaired | No – deemed to accept |
| **Class 2:** Secured Claims | On the Effective Date, each holder of an Allowed Secured Claim shall be entitled to pursue any remedies available to such holder under applicable law. | Unimpaired | No – deemed to accept |
| **Class 3:** Unsecured Claims | Each holder of an Allowed Unsecured Claim will receive its Pro Rata Share of Available Cash following the payment of Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and statutory fees pursuant to section 11.1 of the Plan, and establishment of reserves for Disputed Administrative Expenses, Disputed Priority Tax Claims, and Disputed Priority Non-Tax Claims. | Impaired | Yes |
| **Class 4:** Nitram PI Claims | Each holder of a Nitram PI Claim will be entitled to elect on such holder's Ballot one of the following two options: (a) to remain in Class 4 and limit such holder's recovery on account of an Allowed Nitram PI Claim to any Insurance Proceeds available for such holder's Claim, in which case such holder shall have the sole responsibility for seeking recovery under the Nitram PI Insurance Policies on account of such Allowed Nitram PI Claim and to satisfy any and all retrospective premiums, retentions or deductibles under the Nitram PI Insurance Policies, if any, or (b) to have such holder's Nitram PI Claim treated under the Plan as an Unsecured Claim pursuant to Class 3, in which case such holder will waive all rights to seek recovery on such claim from any other property of the Debtors' estates, including any Insurance Proceeds, except pursuant to Distributions made to Class 3 under the Plan. | Impaired | Yes |
| **Class 5:** Affiliate Claims | Each holder of an Allowed Affiliate Claim will receive its Pro Rata Share of Available | Impaired | Yes |

| CLASS | TREATMENT | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| | Cash following the payment in full of Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, statutory fees pursuant to section 11.1 of the Plan, and Allowed Unsecured Claims and establishment of reserves for Disputed Administrative Expenses, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Unsecured Claims. | | |
| **Class 6:** Equity Interests | No Distribution of Available Cash shall be made under the Plan in respect of the Equity Interests in either of the Debtors. Notwithstanding the foregoing, the holders of the Debtors' Common Stock shall continue to hold such Equity Interests for the sole purpose of implementing the Plan. | Impaired | No – deemed to reject |

3.2    *Classification and Treatment.*

(a) **Class 1. Priority Non-Tax Claims.**

(i)    *Classification*: Class 1 consists of all Allowed Priority Non-Tax Claims.

(ii)    *Treatment*: Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of its Allowed Priority Non-Tax Claim, in full, in Cash, on the later of the Effective Date and as soon as practicable after the date such Priority Non-Tax Claim becomes Allowed.

(iii)    *Status*: Class 1 is not impaired. The holders of the Claims in Class 1 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(b) **Class 2. Secured Claims.**

(i)    *Classification*: Class 2 consists of Allowed Secured Claims.

(ii)    *Treatment*: The legal, equitable, and contractual rights of the holder of any Allowed Secured Claim shall be unaltered.

(iii)    *Status*: Class 2 is unimpaired, and the holders of Class 2 Claims are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

(c) **Class 3. General Unsecured Claims.**

(i)    *Classification*: Class 3 consists of Allowed Unsecured Claims.

(ii)    *Treatment*:  Except to the extent that a holder of an Allowed Unsecured Claim agrees to a different, less favorable treatment, after satisfaction in full of all Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, payment of all statutory fees pursuant to section 11.1 of the Plan, and establishment of reserves for Disputed Administrative Expenses, Disputed Priority Tax Claims, and Disputed Priority Non-Tax Claims, each holder of an Allowed Unsecured Claim in Class 3 will receive on each Distribution Date its Pro Rata Share of Available Cash; *provided, however*, the aggregate Distributions received by a holder of an Allowed Unsecured Claim pursuant to the Plan on account of such Allowed Unsecured Claim shall not exceed the Allowed Amount of its Allowed Unsecured Claim.

(iii)    *Status*:  Class 3 is impaired, and the holders of Class 3 Claims are entitled to vote on the Plan.

(d) **Class 4. Nitram PI Claims.**

(i)    *Classification*:  Class 4 consists of Nitram PI Claims.

(ii)    *Treatment*:  Each holder of a Nitram PI Claim shall elect, by marking the appropriate box on such holder's Ballot, one of the following two treatment options:

1.  ***Option One:***  treatment of such holder's Nitram PI Claim under Class 4 of the Plan, in which case such holder will be deemed to have to limited such holder's distribution on account of such Nitram PI Claim to the Insurance Proceeds available for such holder's Claim, if any (without warranty or representation of any kind from AWI or either of the Debtors with respect to the availability of Insurance Proceeds with respect to such claim), and such holder shall have the sole responsibility for seeking recovery under the Nitram PI Insurance Policies on account of such Allowed Nitram PI Claim and to satisfy any and all retrospective premiums, retentions or deductibles under the Nitram PI Insurance Policies, if any;

*or*

2.  ***Option Two:***  treatment of such holder's Nitram PI Claim as an Unsecured Claim in Class 3, in which case such holder will be deemed to have waived any and all rights to seek recovery on such claim from any other property of the Debtors' estates, including, without limitation, any Insurance Proceeds, except pursuant to Distributions made to holders of Allowed Unsecured Claims under Class 3 of the Plan.

*If the holder of a Nitram PI Claim does not return a Ballot or does not make an election on the Ballot, he or she shall be deemed to have elected treatment under Option One above and, as such, will remain a Class 4 Claim.*

(iii)     *Status*:  Class 4 is impaired, and the holders of Class 4 Claims are entitled to vote on the Plan.

### (e) Class 5. Affiliate Claims.

(i)     *Classification*:  Class 5 consists of Affiliate Claims.

(ii)     *Treatment*:  Except to the extent that a holder of an Allowed Unsecured Claim agrees to a different, less favorable treatment, after satisfaction in full of all Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Unsecured Claims, payment of all statutory fees pursuant to section 11.1 of the Plan, and establishment of reserves for Disputed Administrative Expenses, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Unsecured Claims, each holder of an Allowed Affiliate Claim in Class 5 will receive on each Distribution Date its Pro Rata Share of Available Cash; *provided, however*, the aggregate Distributions received by a holder of an Allowed Affiliate Claim pursuant to the Plan on account of such Allowed Affiliate Claim shall not exceed the Allowed Amount of its Allowed Affiliate Claim.

(iii)     *Status*:  Class 5 is impaired, and the holders of Class 5 Claims are entitled to vote on the Plan.

### (f) Class 6. Equity Interests.

(i)     *Classification*:  Class 6 consists of Equity Interests.

(ii)     *Treatment*:  No distribution of Available Cash shall be made under the Plan from Debtors' consolidated estates in respect of the Equity Interests in either of the Debtors.  The holders of Equity Interests shall continue to hold them for the sole purpose of implementing the Plan, including facilitating the dissolutions contemplated by section 8.2(c) of the Plan.  On the date on which a Debtor files a certificate of dissolution with the Office of the Secretary of State for the State of Delaware as contemplated by section 8.2(c) of the Plan, the certificates that previously evidenced ownership of such Debtor's Common Stock shall be deemed cancelled and shall be null and void, the holder(s) thereof shall no longer have any rights in respect of the Equity Interests in such Debtor, and such certificates shall not evidence any rights under the Plan.

(iii)     *Status*:  Class 6 is impaired.  The holders of the Equity Interests in Class 6 are deemed to reject the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

3.3     In the event of a controversy as to whether any class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy prior to the Confirmation Date.

# ARTICLE IV

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

4.1 *Modification of the Plan.* The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and intents of the Plan. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

4.2 *Revocation or Withdrawal.*

(a) *Right to Revoke.* The Debtors, in their sole discretion, may revoke or withdraw the Plan prior to the Confirmation Date.

(b) *Effect of Withdrawal or Revocation.* If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by the Debtors or any Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

# ARTICLE V

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

5.1 *Objections to Claims; Prosecution of Disputed Claims.* Except as provided in section 5.3 below with respect to Nitram PI Claims, the Debtors shall object to the allowance of Claims filed with the Bankruptcy Court with respect to which the Debtors dispute liability in whole or in part. All objections that are filed and prosecuted by the Debtors as provided herein shall be litigated to Final Order by the Debtors or compromised and settled in accordance with the Claims Settlement Guidelines. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Debtors to Claims shall be served and filed no later than forty-five (45) days after the Effective Date.

5.2 *Distributions on Account of Disputed Claims.* Notwithstanding section 3.2 and ARTICLE VII hereof, a Distribution shall only be made by the Debtors to the holder of a Disputed Claim when, and to the extent that, such Disputed Claim becomes Allowed. No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code. No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by section 5.1 hereof.

5.3 *Nitram PI Claims.*

(a) All of the Nitram PI Claims are Disputed Claims. Each of the Nitram PI Claims as to which a proof of claim was timely filed in the Chapter 11 Cases shall be determined and liquidated (a) in the court in which it is pending on the Confirmation Date, (b) if no such action is pending on the Confirmation Date, in any court of appropriate jurisdiction, or (c) by settlement or compromise pursuant to the Claims Settlement Guidelines set forth in Exhibit 1.20 of the Plan. Nitram, however, reserves the right to file an objection to any Nitram PI Claim with the Bankruptcy Court to the extent resolution of such objection would not impair any right of the holder of such Nitram PI Claim to a jury trial.

(b) The holder of a Nitram PI Claim electing to be treated as a Class 4 Claim in accordance with Option One in section 3.2(d) shall have the right to pursue the recovery of Insurance Proceeds on account of such holder's claim in the name of Nitram or, as permitted by applicable non-bankruptcy law, in its own name. The holder of a Nitram PI Claim electing Option One under Class 4 shall also have the right to pursue rights under settlement agreements made with respect to such Nitram PI Insurance Policies, rights against the estates of insolvent insurers that issued such Nitram PI Insurance Policies or entered into such settlement agreements, and rights against state insurance guaranty associations arising out of any such Nitram PI Insurance Policies issued by insolvent issuers. The holder of a Nitram PI Claim electing to be treated as a Class 4 Claim under Option One may compromise and settle any such claim for insurance coverage as such holder deems appropriate; *provided, however*, the holder of an Allowed Nitram PI Claim does not have the right to give a full release of the rights of Nitram or release any claim for coverage that may be asserted by any other holder of a Nitram PI Claim under the Nitram PI Insurance Policies.

(c) All injunctions or stays in effect on the Confirmation Date pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, in the Chapter 11 Cases shall be modified to permit the determination and liquidation of the Nitram PI Claims and, with respect to those Nitram PI Claimants electing to be treated as a Class 4 Claim under Option One in section 3.2(d) of the Plan, to permit such Nitram PI Claimants to pursue coverage pursuant to this section 5.3.

5.4     *Estimation of Claims*. The Debtors may, at any time, request the Bankruptcy Court to estimate any Disputed Claim other than a Nitram PI Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during the pendency of any litigation or arbitration concerning any objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

5.5     *Disputed Claims Reserves*.

(a) *Disputed Administrative Expenses, Disputed Priority Tax Claims, and Disputed Priority Non-Tax Claims*. On the Effective Date, the Debtors will establish with the Disbursing Agent an account for Disputed Administrative Expenses, Disputed Priority Tax Claims, and Disputed Priority Non-Tax Claims into which the Debtors shall deposit Cash in an amount equal to the aggregate amount that all holders of Disputed Administrative Expenses,

Disputed Priority Tax Claims, and Disputed Priority Non-Tax Claims would have been entitled to receive under the Plan if such Claims had been Allowed in the full Disputed Claims Amount on the Effective Date. To the extent any such Disputed Claim becomes Allowed after the Effective Date, the Disbursing Agent may use Cash from such account to fund the Distribution to such holder of its Allowed Administrative Expense, Allowed Priority Tax Claim, or Allowed Priority Non-Tax Claim, as the case may be. On any Distribution Date, any Cash remaining in such account (after deducting any expenses related to such account, including taxes) in excess of the aggregate amount that all holders of Disputed Administrative Expenses, Disputed Priority Tax Claims, and Disputed Priority Non-Tax Claims would have been entitled to receive if such Claims had been Allowed in the full Disputed Amount on such Distribution Date shall be considered Available Cash.

(b) *Disputed Unsecured Claims.* On the Initial Distribution Date, the Debtors will establish with the Disbursing Agent the Disputed Unsecured Claims Reserve, an account into which the Debtors shall deposit Available Cash in an amount necessary to distribute to each holder of a Disputed Claim the amount that such holder would have been entitled to receive under Class 3 of the Plan if such Claim had been an Allowed Claim on the Initial Distribution Date in an amount equal to the Disputed Claim Amount for such Disputed Unsecured Claim. To the extent any such Disputed Claim becomes Allowed after the Initial Distribution Date, the Disbursing Agent shall use Cash from the Disputed Unsecured Claims Reserve to fund the Distributions such holder of an Allowed Unsecured Claim would have been entitled to receive if such holder's Allowed Unsecured Claim had been Allowed in the Allowed Amount on the date of each Distribution occurring prior to such allowance. On any Distribution Date after the Initial Distribution Date, any Cash remaining in such account (after deducting any expenses related to such account, including taxes) in excess of the aggregate amount that all holders of remaining Disputed Unsecured Claims would have been entitled to receive on such Distribution Date and all prior Distribution Dates if such Claims had been Allowed in the full Disputed Amount shall be considered Available Cash.

(c) *No Requirement to Invest Cash in the Disputed Claims Reserves.* The Disbursing Agent shall not be required to invest the Cash held in any of the disputed claims reserves.

(d) *Tax Treatment of Disputed Claims Reserves.* Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Disbursing Agent shall (i) treat each reserve established under this section 5.5 as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and (ii) to the extent permitted by applicable law, report consistently for state and local income tax purposes. All parties (including the Debtors and holders of Claims) shall report for tax purposes consistently with such treatment. The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the reserves established under this section 5.5 for all taxable periods through the termination of such reserves.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

6.1     *Impaired Classes to Vote.* Each holder of a Claim in an impaired Class of Claims of Equity Interests, not otherwise deemed to reject the Plan, and the holder of a Claim that has been temporarily allowed for voting purposes only pursuant to Bankruptcy Rule 3018(a),

shall be entitled to vote to accept or reject the Plan to the extent and in the manner provided by the Voting Procedures.

6.2    *Acceptance by Class of Claims*.  Acceptance of the Plan by any impaired Class of Claims shall be determined in accordance with the Voting Procedures.

6.3    *Nonconsensual Confirmation*.  In the event that any impaired Class of Claims fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which .case the Plan shall constitute a motion for such relief, or (b) amend the Plan in accordance with section 4.1 hereof.  Because Class 6 is deemed to have rejected the Plan, the Debtors will be seeking to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to Class 6.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

7.1    *Disbursing Agent*.  All Distributions under the Plan shall be made by the consolidated Debtors as Disbursing Agent or such other entity designated by the consolidated Debtors as a Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.  The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.  If the Disbursing Agent is an entity other than the Debtors, the Debtors shall pay the reasonable fees and reasonable and actual expenses of the Disbursing Agent (except to the extent that AWI agrees to assume responsibility for payment of such fees and expenses).

7.2    *Funding Distributions to Holders of Allowed Claims*.  Distributions under the Plan shall be funded by the Available Cash or, with respect to Disputed Claims that later become Allowed, from Cash maintained in a reserve under section 5.5 hereof on account of such Disputed Claim.  In addition, if all the conditions to the AWI Contribution, as defined in the letter agreement set forth in Exhibit 7.2 to the Plan, are satisfied, on the later of (a) Effective Date and (b) December 31, 2007, AWI shall transfer to the Debtors, for the benefit of the holders of Allowed Claims under the Plan, $200,000.00 in Cash, which shall become property of the Debtors' consolidated estates and be distributed pursuant ARTICLE III of the Plan.

7.3    *Distributions to Holders of Allowed Claims*.  On the Initial Distribution Date, each Distribution Date thereafter, and the Final Distribution Date, to the extent that the Debtors have Available Cash, they shall distribute such Available Cash to the holders of Allowed Claims in accordance with the provisions of ARTICLE III; *provided, however*, that in no event shall the foregoing impair the right of the Debtors to use excess funds to satisfy the costs of administering and fully consummating the Plan; and *provided further*, on the Final Distribution Date, the Disbursing Agent shall not be obligated to make such a Distribution to holders of

Allowed Claims if, in the discretion of the Disbursing Agent, the cost of making such Distribution would be more than half the amount of the Available Cash to be distributed, in which event such funds shall, without further order of the Bankruptcy Court, be delivered to AWI free and clear of any claim or interest of any nature whatsoever, including, without express or implied limitation, escheat rights of any governmental unit under applicable law, to reimburse AWI for professional fees and the expenses incurred on behalf of the Debtors from and after October 2, 2006, the date on which AWI emerged from bankruptcy protection, in connection with administering the Plan, with any excess donated to a not-for-profit charitable organization selected by the Debtors.

  7.4 *Distributions under the Plan.* Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

  7.5 *Timing of Distributions under the Plan.* Any Distribution to be made by the Debtors pursuant to the Plan shall be deemed to have been timely made if made within ten (10) days after the time therefor specified in the Plan. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

  7.6 *Manner of Payment under the Plan.* Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Debtors shall be made, at the election of the Debtors, by check drawn on a domestic bank or by wire transfer from a domestic bank.

  7.7 *Fractional Distributions.* Notwithstanding anything to the contrary contained herein, no Cash payments of fractions of cents will be made. Fractional cents shall be rounded to the nearest whole cent (with .5 cent or less to be rounded down).

  7.8 *Delivery of Distributions.* Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the last known address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtors or their agents, unless the Debtors have been notified in writing by the holder of such Claim of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address for such holder listed on the Schedules or the Debtors' books and records; *provided, however,* that the Debtors shall not be obligated to make any further Distributions to any holder of Allowed Claim where a prior Distribution to any such holder was either returned to the Debtors as undeliverable or unclaimed as set forth in section 7.9 of the Plan.

  7.9 *Distribution of Undeliverable or Unclaimed Property.* If (a) a Distribution under the Plan is returned to the Debtors as undeliverable, and the Debtors, after reasonable inquiry, are unable to locate a new address for the holder of the Allowed Claim to which such Distribution was made or (b) a check evidencing a Distribution under the Plan is not cashed by a date that is ten (10) days prior to the Distribution Date that is immediately following the Distribution Date on which such uncashed check was distributed, then the Debtors shall not be obligated to make any further Distributions on account of such Allowed Claim, such Allowed Claim shall be treated as a Disallowed Claim for all further Distributions, and the funds set aside to fund the Distributions to the holder of such Claim shall become part of Available Cash.

7.10 *Allocation of Plan Distributions Between Principal and Interest.* To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim (as determined for federal income tax purposes) first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

7.11 *Distributions to Holders as of the Confirmation Date.* As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holder of any Claim. The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Confirmation Date. The Disbursing Agent shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Confirmation Date.

7.12 *Minimum Distributions.* No Distribution less than $25.00 shall be made by the Disbursing Agent to any holder of an Allowed Claim unless (a) such holder marks the appropriate box on the Ballot indicating that such holder would like to receive Distributions totaling less than $25.00 or (b) submits a written request to the Disbursing Agent indicating that Distributions totaling less than $25.00 should be distributed notwithstanding this section 7.12 of the Plan. Any undistributed amount under this section 7.12 shall be held over for distribution to the holder of such Allowed Claim on the immediately succeeding Distribution Date and shall not be considered part of Available Cash for the purposes of the immediately succeeding Distribution Date.

7.13 *Withholding and Reporting Requirements.* In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution. The Disbursing Agent has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory the Disbursing Agent for payment of any such tax obligations. The Disbursing Agent may require, as a condition to receipt of a Distribution, that the holder complete either a Form W-8 or Form W-9, as applicable to each such holder, unless such holder includes its tax identification number and other requested information on the Ballot.

7.14 *Setoffs.* The Disbursing Agent may, in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against or recoup from any Allowed Claim and the Distributions on account of such Claim (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim, including, without limitation, any rights of the Debtors under section 502(d) of the Bankruptcy Code; *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Disbursing Agent on behalf of the Debtors or the Debtors in Possession (or any successor thereto) of any such claims, rights and causes of action that the Debtors or the Debtors in Possession (or any successor thereto) may possess against such holder; and *provided further,* that any claims of the Debtors (or any successor thereto) arising before the Commencement Date

shall first be set off against Claims against the Debtors (or any successor thereto) arising before the Commencement Date.

## ARTICLE VIII

## IMPLEMENTATION OF THE PLAN

8.1     *Substantive Consolidation*

(a) The Plan is premised upon the substantive consolidation of the Debtors. Accordingly, on or following the Effective Date, (i) the Debtors shall be deemed merged, (ii) all Intercompany Claims, including, but not limited to those listed in Exhibit 1.50 to the Plan, shall be canceled and no distribution shall be made on account thereof, (iii) all assets and liabilities of the Debtors shall be deemed merged, and (iv) each and every Claim filed or to be filed in the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one Claim against, and obligation of, the consolidated Debtors.

(b) The substantive consolidation of the Debtors will be for Plan purposes only and will not affect the corporate structure and organization of the Debtors.

(c) A vote to accept the Plan shall be deemed to evidence a claimholder's consent to the substantive consolidation of the Debtors.

**(d) The substantive consolidation of the Debtors pursuant to the Plan shall not affect each Debtor's obligation to (i) pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and (ii) file and transmit reports to the United States Trustee pursuant to Bankruptcy Rule 2015; which obligation, with respect to each Debtor, shall continue until the earliest of the date on which such Debtor's Chapter 11 Case is closed, dismissed or converted.**

8.2     *Continuing Existence.*

(a) From and after the Effective Date, the Debtors shall continue in existence for the purpose of (i) winding up their affairs, (ii) liquidating, by any appropriate method, any remaining assets of their bankruptcy estates as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtors and their bankruptcy estates, (iv) resolving Disputed Claims by means of (x) settlement, pursuant to the Claims Settlement Guidelines set forth in Exhibit 1.20 to the Plan, or (y) obtaining a final judgment entered by a court of competent jurisdiction authorized to hear and make a determination regarding such Disputed Claims, (v) administering the Plan and taking such actions as are necessary to effectuate the Plan, and (vi) filing appropriate tax returns.

(b) From and after the Effective Date, the existing directors of the Debtors and the then current officers of each of the Debtors shall continue to serve in such capacity as the directors and officers of the Debtors through the earlier of the date the applicable Debtor is dissolved in accordance with section 8.2(c) of the Plan and the date such director or officer resigns, is terminated or otherwise unable to serve; *provided, however*, that, in the event that any director or officer of a Debtor resigns, is terminated or unable to serve as a director or officer, the successor to such director or officer shall be selected in accordance with the organizational documents of such Debtor in effect at such time.

(c) Upon Distribution of all assets of the Debtors, other than the Nitram PI Insurance Policies, pursuant to the Plan and the filing by or on behalf of the Debtors of a certification to that effect with the Bankruptcy Court, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each of the Debtors or payments to be made in connection therewith; *provided, however*, that Desseaux should not be dissolved prior to Nitram, and that the Debtors shall each file with the Office of the Secretary of State for the State of Delaware, a certificate of dissolution, which may be executed by an officer of such Debtor without the need for approval by the Board of Directors or the shareholder of such Debtor. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, or obtain any approval from the Board of Directors or shareholders, to withdraw their business operation from any states in which the Debtors previously conducted their business operations.

(d) To the extent that anything in this section 8.2 of the Plan is inconsistent or conflicts with either of the Debtors' bylaws, articles or certificates of incorporation, and related corporate documents, such organizational documents are deemed amended by the Plan to permit and authorize the Debtors to take the actions contemplated by this section 8.2 of the Plan. In addition, as of the Effective Date, the Debtors' respective articles or certificates of incorporation shall be deemed amended to prohibit the issuance of any shares of non-voting stock.

### 8.3 *Establishment of the Administrative Bar Date.*

(a) The Plan establishes the Administrative Bar Date, which was approved by the Bankruptcy Court pursuant to the Confirmation Order.

(b) Except as otherwise provided in this section 8.3 of the Plan, on or before 4:00 p.m., Wilmington, Delaware time, on the Administrative Bar Date, each holder of an Administrative Expense shall file with the Bankruptcy Court a request for payment of Administrative Expense (i) by mailing, hand delivering, or delivering by courier service such request for payment of Administrative Expense to the Clerk of the Bankruptcy Court at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 or (ii) by using the Bankruptcy Court's CM/ECF electronic filing system.

(c) The request for payment of Administrative Expense will be timely filed only if it is ***actually received*** by the Bankruptcy Court by 4:00 p.m., Wilmington Delaware time, on the Administrative Bar Date.

(d) Notwithstanding anything in this section 8.3 of the Plan, Weil, Gotshal & Manges LLP., Richards, Layton & Finger, and Wells Fargo Trumbull shall not be required to file a request for payment of any Administrative Expense on or before the Administrative Bar Date for fees and expenses arising under sections 330, 331, or 503(b)(2)-(5) of the Bankruptcy Code, as such professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules, and the Confirmation Order.

### 8.4 *Term of Injunctions or Stays.* Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the dissolution of the Debtors, *provided, however*, that, as set forth in section 5.3(c) of the Plan, any injunction or stay in effect on the Confirmation Date shall be deemed modified solely to permit any holder of a Nitram PI Claim to commence an action to liquidate such claim and, with respect to those Nitram PI Claimants electing to be treated as Class 4 Claims under

Option One in section 3.2(d) of the Plan, to permit such Nitram PI Claimants to pursue any available insurance coverage in the manner set forth in section 5.3(b).

      8.5    *Occurrence of the Confirmation Date.* The Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless the Bankruptcy Court makes the following findings, each of which shall be contained in the Confirmation Order, unless waived in writing by each of the Debtors:

      (a) As of the Effective Date, the Debtors' estates are substantively consolidated, and each Claim against a Debtor shall be a Claim against the consolidated Debtors.

      (b) AWI shall not be required to transfer to the Debtors $200,000.00 in Cash to fund Distributions to holders of Allowed Claims as contemplated by section 7.2 of the Plan, unless the Confirmation Order becomes a Final Order on or before December 31, 2007.

      8.6    *Occurrence of the Effective Date.* The "effective date of the plan," as used in section 1129 of the Bankruptcy Code, shall not occur, and the Plan shall be of no force and effect, until the Effective Date. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

      (a) The Confirmation Order has become a Final Order.

      (b) The Confirmation Order shall be in full force and effect.

Notwithstanding the foregoing, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent to the Effective Date specified in this section 8.6 or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in this section may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

      8.7    *Accounts.* The Disbursing Agent may establish one or more accounts as it determines may be necessary or appropriate to effectuate the provisions of the Plan and may invest all or a portion of the Cash as directed by the Debtors. Unless instructed by the Debtors, the Disbursing Agent shall have no obligation to invest any Cash held by it.

      8.8    *Cancellation of Securities.* On the Effective Date, all the agreements and other documents evidencing an Equity Interest or rights of any holder of an Equity Interest, other than the Desseaux Common Stock and the Nitram Common Stock, but including options or warrants to purchase Equity Interests and obligations of either of the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be cancelled.

      8.9    *Authority of the Debtors to Effectuate Documents and Further Transactions.* Effective on the Confirmation Date, the Debtors and their respective officers and directors shall be empowered and authorized to take or cause to be taken, whether before or after the Effective Date, all actions necessary and appropriate to enable them to implement effectively and effectuate the provisions of the Plan, including, but not limited to, executing, delivering, filing, and recording any contracts, instruments, releases, and other agreements or documents.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 *Rejection of Executory Contracts and Unexpired Leases.* Except as otherwise provided in this ARTICLE IX, as of the date of the Plan, the Debtors are not aware of any executory contracts or unexpired leases to which either Debtor is a party; however, in an abundance of caution, on the Confirmation Date, all executory contracts or unexpired leases of the Debtors shall be deemed to have been rejected by the Debtors, the Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Debtors shall have no further liability thereunder. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interest of the Debtors, their consolidated estate, and all parties in interest in the Chapter 11 Cases.

9.2 *Claims Arising from Rejection, Termination or Expiration.* Claims created by the rejection of executory contracts or unexpired leases pursuant to section 9.1 of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date, must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after the Confirmation Date. Any Claims for damages arising out of the rejection of an executory contract or unexpired lease pursuant to section 9.1 for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, their estates, assets, properties, or interests in property or any assets, property, or interests in property of any Affiliates of the Debtors. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan and shall be subject to the provisions of Article V of the Plan.

9.3 *Insurance Policies and Agreements.*

(a) *Assumed Insurance Policies and Agreements.* The Debtors do not believe that the insurance policies issued to, or insurance agreements entered into by, either of the Debtors prior to the Commencement Date, including, but not limited to, the Nitram PI Insurance Policies, constitute executory contracts. To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in section 9.1 of the Plan to the contrary, the Plan shall constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their estate, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement.

(b) *Reservation of Rights.* Nothing contained in the Plan, including this section 9.3, shall constitute a waiver of any claim, right, or cause of action that the Debtors may hold against the insurer under any policy of insurance or insurance agreement, including, but not limited to, the Nitram PI Insurance Policies.

9.4    *Indemnification and Reimbursement Obligations.*  For purposes of the Plan, the obligations of the Debtors to indemnify and reimburse persons who are or were directors, officers, or employees of the Debtors on the Commencement Date or at any time thereafter against and for any obligations pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, and remain unaffected thereby, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date.

9.5    *Compensation and Benefit Programs.*  The Debtors have never funded or maintained any retiree benefit plans, funds or programs, as defined in section 1114 of the Bankruptcy Code, for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise).  Any such retiree benefit plans established by the Debtors prior to the Commencement Date were discretionary and never funded, and, accordingly, no such payments will be, or are required to be, made pursuant to section 1129(a)(13).

## ARTICLE X

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) to perform any of the following actions:

10.1    To hear and determine any and all motions or applications pending on the Confirmation Date for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which either of the Debtors is a party or with respect to which the Debtors may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination prior to the Confirmation Date of any executory contract or unexpired lease;

10.2    To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors after the Effective Date;

10.3    To hear and determine any objections to the allowance of Claims arising prior to the Effective Date, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow or disallow any Disputed Claim in whole or in part;

10.4    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

10.5    To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without express or implied limitation, the Confirmation Order;

10.6    To hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan;

10.7    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

10.8    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtors' estates;

10.9    To determine such other matters that may be set forth in the Plan or the Confirmation Order, and that may arise in connection with the Plan or the Confirmation Order;

10.10    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, as Debtors or Debtors in Possession, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination under section 505(b) of the Bankruptcy Code);

10.11    To enter an order or final decree closing the Chapter 11 Cases; and

10.12    To hear and determine any disputes concerning the treatment of the Insurance Proceeds and the Nitram PI Insurance Policies under the Plan.

To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this ARTICLE X shall be deemed to be replaced by the "District Court."

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1    *Payment of Statutory Fees.* All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, shall be paid by or on behalf of the Debtors on or before the Effective Date.

11.2    *Rights of Action.* Subject to section 5.3 of the Plan, any rights, claims, or causes of action accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including, without express or implied limitation, any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of the Debtors, including, but not limited to, the Nitram PI Insurance Policies, shall remain assets of the Debtors' estates. AWI shall be deemed the appointed representative to, and may, pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as appropriate, in accordance with what is in the best interests of and for the benefit of the Debtors and in accordance with the Claims Settlement Guidelines.

11.3    *Third Party Agreements.* The Distributions to the various classes of Claims hereunder shall not affect the right of any Entity to levy, garnish, attach, or employ any

other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto shall remain in full force and effect.

11.4    *Exculpation.* None of the Debtors, their Affiliates, including AWI, or any of their officers, directors, employees, or agents shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan.

11.5    *Notices.* Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:        Nitram Liquidators, Inc. and
                          Desseaux Corporation of North America
                          c/o Armstrong World Industries, Inc.
                          Corporate Center
                          Post Office Box 3666
                          Lancaster, Pennsylvania 17604-3666
                          Attention: General Counsel


                          *and*

                          Weil, Gotshal & Manges LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Attention:    Debra A. Dandeneau, Esq.
                          Telecopier: (212) 310-8007
                          Telephone Confirmation: (212) 310-8888

11.6    *Headings.* The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

11.7    *Severability.* At the unanimous option of the Debtors, any provision of the Plan, the Confirmation Order, or any of the exhibits to the Plan that is prohibited, unenforceable, or invalid shall, as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated, be ineffective to the extent of such prohibition, unenforceability, or invalidation without invalidating the remaining provisions of the Plan, the Confirmation Order, and the exhibits to the Plan or affecting the validity or enforceability of such provisions in any other jurisdiction.

11.8    *Governing Law.* Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware,

without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

11.9 *Plan Controls.* To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

Dated: Wilmington, Delaware
~~September 20,~~**October 26,** 2007

Respectfully submitted,

NITRAM LIQUIDATORS, INC.

By: *_/s/_____*
    Name: Walter Gangl
    Title: Secretary

DESSEAUX CORPORATION OF NORTH AMERICA

By: *_/s/_____*
    Name: Walter Gangl
    Title: President and Secretary

WEIL, GOTSHAL & MANGES LLP
Co-Attorneys for Nitram Liquidators, Inc. and
Desseaux Corporation of North America
Chapter 11 Debtors in Possession
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

and

RICHARDS, LAYTON & FINGER
Co-Attorneys for Nitram Liquidators, Inc. and
Desseaux Corporation of North America
Chapter 11 Debtors in Possession
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------- x

*In re*          :       **Chapter 11 Case No.**

        :

**ARMSTRONG WORLD INDUSTRIES,**       :       **00-4471 (JKF)**
**INC.,** *et al.,*          :

        :

        **Debtors.**      :       **(Jointly Administered)**

------------------------------------------------------------- x

## Exhibit List

| | |
|---|---|
| Exhibit 1.20 | Claims Settlement Guidelines (*attached*) |
| Exhibit 1.50 | Intercompany Claims (*attached*) |
| Exhibit 1.67 | Voting Procedures (*attached*) |
| Exhibit 7.2 | Letter Agreement from Armstrong World Industries, Inc. ~~(to be filed)~~ |

Document comparison done by DeltaView on Friday, October 26, 2007 11:36:53 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://mi1/186886/8 |
| Document 2 | pcdocs://mi1/186886/9 |
| Rendering set | WGM Miami |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| **Moved to** | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 27 |
| Deletions | 13 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 40 |